# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

  v.                                  Case No. 05-CR-13

**ROBERT G. BROWNELL,**
**ROBERT E. MANN,**
**NORMAN C. HANSON, and**
**MICHAEL A. GRAL,**

        **Defendants.**

---

## ORDER DENYING THE DEFENDANTS' MOTIONS TO SEVER

---

On January 19, 2005, the government filed a single-count, superseding information (hereinafter "information") against the defendants in this case. The information alleges that the defendants conspired to commit mail and wire fraud, in violation of Title 18, United States Code, Sections 1349.

Norman C. Hanson ("Hanson") and Michael A. Gral ("Gral") have each filed a motion to sever, in which they request individual trials. The submissions on the defendants' motions are now complete, and they are ready for resolution. A jury trial is scheduled to commence before the Honorable Charles N. Clevert on October 24, 2005, with a final pretrial conference set for October 13, 2005.

1

## CHARGES AGAINST HANSON AND GRAL

The defendants' alleged conspiracy encompassed a number of financial transactions that involved Hanson and Gral. The information alleges that Gral served as counsel for Bielinski Brothers, Inc. ("Bielinski"), a construction company that is the victim of the defendants' alleged conspiracy. Gral and co-defendant Robert G. Brownell ("Brownell"), the Chief Executive Officer of Bielinski, were business partners. Through one of their businesses, Belize LLC, Gral and Brownell allegedly purchased and developed real estate using money that belonged to Bielinski. (Information ¶ 31.). In addition, Gral and Brownell allegedly purchased real estate with money that belonged to FHB Investments, LLC (a business that was operated by Brownell, Frank Bielinski, and Harry Bielinski) and then transferred the real estate to another of their businesses, Georgetown Investments. (Information ¶ 32.). Furthermore, Gral allegedly accepted checks from Brownell drawn on Bielinski's account, agreed not to negotiate the checks, and then provided Brownell with escrow agreements representing that the funds were deposited with his law firm. (Information ¶ 33.).

The information alleges that Hanson and Brownell also worked together in furtherance of the conspiracy. Hanson is a principal of Welch Hanson & Associates ("Welch Hanson"), a civil engineering firm, and the partner in a limited liability company known as NCCBH. (Information ¶¶ 9-10.). Through Welch Hanson and NCCBH, Hanson allegedly billed Bielinski for work that was done for one of Brownell's and Gral's Georgetown businesses and for work that was not related to any actual project. Brownell then approved these bills and issued payment by Bielinski. Hanson allegedly agreed to bill Bielinski in this manner and received a percentage of the Bielinski payments for his personal use. (Information ¶¶ 20-24.). In addition, Hanson is also alleged to

have used proceeds from the conspiracy to fund illegal political campaign contributions. (Information ¶ 38, 40, 47.).

### MOTIONS TO SEVER

Hanson and Gral seek severance from the other defendants pursuant to Federal Rule of Criminal Procedure 14. Criminal Rule 14 reads, in relevant part, as follows:

> (a) Relief.
> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Hanson and Gral claim prejudice sufficient to warrant severance under Rule 14(a) on several bases. Both defendants argue that a joint trial will prevent them from eliciting exculpatory testimony from their co-defendants, and both submit that severance is required to prevent a violation of the Confrontation Clause. In support of this second claim, Hanson and Gral predict that the government is likely to introduce statements made by the co-defendants that implicate them as conspirators at a joint trial. According to the defendants, this risks a violation of the Confrontation Clause because, if the other defendants choose not to testify at a joint trial, Hanson and Gral will not be able to cross-examine them about their statements.

In addition, Gral claims that severance is required because he will be prejudiced at a joint trial by the "spillover" of evidence applicable to the other defendants and because there is a disparity in the weight of the evidence against him compared to the evidence against the other defendants. In support of these claims, Gral contends that the case is complex; that the case involves many financial transactions, occurring over four years time; and that a significant quantity of evidence relates to the co-defendants only and would not be admissible at an individual trial.

3

## SEVERANCE STANDARDS

Severance is appropriate under Rule 14 only if there is serious risk that a joint trial would compromise a specific trial right of the defendant or that the jury would be unable to reach a reliable decision about the defendant's guilt or innocence. United States v. Smith, 308 F.3d 726, 736 (7th Cir. 2002); United States v. Hughes, 310 F.3d 557, 563 (7th Cir. 2002); United States v. Rivera, 6 F.3d 431, 438 (7th Cir. 1993). The defendant has the burden of showing actual prejudice resulting from joinder, and it is not adequate to show merely that the defendant would have a better chance of acquittal if the trial were severed. United States v. L'Allier, 838 F.2d 234, 241 (7th Cir. 1988); United States v. Abraham, 541 F.2d 1234, 1240 (7th Cir. 1976).

In considering a motion for severance, the court should give due deference to the strong public interest in having persons jointly indicted tried together. Mack v. Peters, 80 F.3d 230, 234 (7th Cir.1996). Deference for joint trials is appropriate because joinder enhances judicial efficiency and avoids expensive and duplicative trials. United States v. Freland, 141 F.3d 1223, 1226 (7th Cir.2002). In addition, joint trials generally "provide[] the best perspective on the evidence as a whole" and thus "increase[] the likelihood of a correct outcome." United States v. Buljubasic, 808 F.2d 1260, 1263 (7th Cir.1987). Joint trials also "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts," which are both vital to the criminal justice system. Zafiro v. United States, 506 U.S. 534, 537 (1993)(citing Richardson v. Marsh, 481 U.S. 200, 209-10 (1987)).

For all of these reasons, courts are to construe the joinder rule broadly. In addition, if the defendant makes a showing of actual prejudice, severance should be granted only if the court determines that risk of prejudice to the defendant outweighs the many policies that encourage joint

4

trials. United States Donaldson, 978 F.2d 381, 391 (7th Cir. 1992); United States v. Peters, 791 F.2d 1270, 1287 (7th Cir. 1986).

## ANALYSIS

With these standards in mind, the court concludes that severance is not required to prevent unfair prejudice Hanson or Gral. The defendants' claim based on their inability to obtain exculpatory testimony from the co-defendants will be discussed first.

### I. Unavailability of Exculpatory Testimony

Severance on the basis that the defendant will be deprived of exculpatory testimony by the co-defendants depends on: (1) whether the co-defendant's testimony would be exculpatory; (2) whether the co-defendant would in fact testify at a separate trial; and (3) whether the testimony would bear on defendant's case. United States v. Studley, 892 F.2d 518, 525 (7th Cir. 1989)(citing United States v. Melton, 689 F.2d 679, 686 (7th Cir.1982)).

Hanson's claim of prejudice is a general one. Hanson says that a joint trial will deny him the right to a fair trial because it "will prevent him from exercising his rights to present evidence on his own behalf and from engaging in cross-examination of his co-defendants to obtain exculpatory information." (Hanson Br. at 3.). Hanson claims that further specifics regarding the three relevant severance considerations are contained in his counsel's supporting affidavit. Although the affidavit does provide additional detail as to statements that *might incriminate* Hanson, the court does not find discussion of potentially exculpatory testimony. This is problematic because the general statement quoted above does not allow the court to weigh the considerations set forth in Studley. Accordingly, Hanson has not demonstrated that severance is warranted on this basis.

5

The same is true in regard to Gral's showing of prejudice. As part of his defense, Gral denies knowledge that Bielinski paid for work done to benefit one of his and Brownell's Georgetown businesses. (Gral Br. at 2.). Gral claims that Hanson would present exculpatory testimony that supports this defense based on a summary report of a statement that Hanson made to law enforcement officials investigating this case. The summary report reflects that "Hanson did not know whether Gral knew that Welch Hanson was billing Bielinski" for work done on the Georgetown projects and that it was Brownell (and presumably not Gral) who wanted work on the Georgetown projects billed to Bielinski. (Gral Br. at 2; Fishbach Decl. ¶ 4.).

Gral also claims that he would compel the testimony of Brownell if his trial were severed from the other defendants. According to the FBI summary reports of Brownell's statements to agents, Brownell said that FHB Investment's board of executives discussed the real estate purchased and transferred to Georgetown Investments. (Gral Br. at 3; Fishbach Decl. ¶ 6.). Gral submits that this particular statement shows that the real estate purchase and transfer charged in the information were not fraudulently carried out, without notice to Frank and Harry Bielinski, because both are members of the board of executives.

Although Gral's showing is more specific than the general allegation of prejudice submitted by Hanson, the court cannot conclude that Gral's showing warrants severance under the three considerations set forth in <u>Studley</u>. While the cited statements are arguably exculpatory and bear on Gral's defenses, there is no certainty that Hanson and Brownell would testify, and if so, that their testimony would be consistent with the summary reports which were prepared by law enforcement officials from conversations with the other defendants. In addition, Gral did not submit the actual reports for the court's review, but only offers his attorney's summation of same. This hinders the court's ability to determine the context in which the statements were made,

6

whether the summaries presented accurately reflect what Hanson and Brownell said to the agents, and whether there were any other comments that might offset the alleged exculpatory value of the statements.

More problematic, however, is the fact that Gral did not argue that Hanson and Brownell would be willing to testify at a separate trial. Gral recognizes this deficiency for the first time in his reply brief and suggests that his trial be held after Hanson's and Brownell's trial. Gral contends that this trial sequence would allow him to compel the co-defendants' testimony because the Fifth Amendment privilege against self-incrimination is no longer available after criminal charges have been fully adjudicated. (Gral Reply at 2.).

Even if the trial sequence was held as Gral urges, the court disagrees with his position. It is well established that the Fifth Amendment privilege against self-incrimination is one of the core concepts of our adversarial system. Accordingly, the court "has always broadly construed its protection to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action." In re Corrugated Container Antitrust Litigation, 661 F.2d 1145, 1149-1150 (7th Cir. 1979)(quoting Maness v. Meyers, 419 U.S. 449, 462 (1975)). The right to assert one's Fifth Amendment privilege against prosecution does not depend upon the likelihood, but rather upon the possibility, of prosecution. In re Folding Carton Antitrust Litigation, 609 F.2d 867, 872 (7th Cir. 1979). Ultimately, a witness may invoke his Fifth Amendment privilege whenever the witness can demonstrate any possibility of prosecution that is more than fanciful. In re Folding Carton Antitrust Litigation, 609 F.2d 867, 871 (7th Cir. 1979); Resnover v. Pearson, 965 F.2d 1453, 1462 (7th Cir. 1992).

The Seventh Circuit Court of Appeals applied these principles in United States v. Mabrook, 301 F.3d 503 (7th Cir. 2002), a case that is analogous to the present one. Mabrook was

7

convicted of mail and wire fraud after a jury trial. Evidence introduced as his trial included incriminating statements provided to law enforcement officials by one of Mabrook's former business associates. Id. at 506. The former business associate had already been convicted for his role in the mail and wire fraud scheme by the time of Mabrook's trial. Yet, despite his previous conviction, the business associate did not testify at Mabrook's trial, invoking his Fifth Amendment privilege against self-incrimination. Id.

On appeal, Mabrook argued that the trial court erred in allowing the business associate to invoke the Fifth Amendment privilege as to matters outside the statute of limitations. The Seventh Circuit rejected this argument based on the fact that the business associate faced a possibility that his testimony would expose him to charges of conspiracy, a 18 U.S.C. § 1001 violation for making false statements, or Racketeer Influenced and Corrupt Organizations ("RICO") liability. Id. at 506-07. Thus, even though the business associate had already been convicted of mail and wire fraud, his right to invoke the Fifth Amendment was held to persist, and the district court's decision to preclude the business associate's testimony was affirmed. Id. at 507.

The reasoning of Mabrook applies in the present case. If convicted, Hanson and Brownell could not be prosecuted a second time on charges of conspiracy to commit wire and mail fraud, but it is possible that testifying at Gral's subsequent trial may leave them facing additional charges based on RICO, 18 U.S.C. § 1001, or the substantive offenses of mail and wire fraud. This possibility is far more real than that the possibility of criminal prosecution mentioned in Ibarra v. Martin, the case cited in Gral's reply brief. 143 F.3d 286, 288-89 (7th Cir. 1998)(parenthetically commenting that Ibarra failed to establish a credible fear of criminal prosecution, such that his refusal to make a statement at his employer's predisciplinary hearing might be justified, where

8

Ibarra had already been acquitted of a criminal misdemeanor charge and was pursuing a § 1983 due process claim against his employer). Under Mabrook, Hanson and Brownell would still have the option of asserting their Fifth Amendment privilege even if Gral's trial were severed and scheduled as requested in his motion. This prevents the court from concluding that Gral will suffer sufficient prejudice (if any) to warrant a separate trial. As to this basis for severance, Gral's motion will be denied.

## II. Confrontation Clause

As mentioned earlier, both Gral and Hanson claim prejudice based on the Confrontation Clause of the Sixth Amendment. The Confrontation Clause protects a criminal defendant's right to physically face those who testify against him and guarantees the right to conduct cross-examination. United States v. McGee, 408 F.3d 966, 974 (7th Cir. 2005); United States v. Williamson, 202 F.3d 974, 977 (7th Cir. 2000). The requirement of face-to-face, in-court testimony allows the trier of fact to observe the accuser's demeanor, nervousness, expressions, and other body language; impresses the seriousness of the matter upon accuser; ensures that statements are given under oath; assures the accuser's identity, that accuser is not being coached or influenced during testimony, and that accuser is not improperly referring to documents. United States v. Hamilton, 107 F.3d 499, 503 (7th Cir. 1997).

Gral's and Hanson's Confrontation Clause rights are vulnerable in the present case because the co-defendants made statements to law enforcement officials that implicate Gral's and Hanson's involvement in the charged offense. If the government uses those incriminating statements at trial, and the co-defendants do not testify, a Confrontation Clause violation will occur. Gral and Hanson seek severance to avoid this possibility.

The government responds that it is aware of the risk inherent in using the co-defendants' statements at a joint trial. To avoid a Confrontation Clause violation, the government says that it will not introduce portions of a defendant's statement (1) if the statement implicates a co-defendant and (2) the defendant who gave the statement does not testify. In addition, the government suggests that Gral's and Hanson's concerns be addressed by redacting the incriminating references to them instead of severing the trials.

In light of these commitments from the government, the court finds that severance is not required at this time. Proper redaction of an incriminating statement, combined with an instruction that limits the jury's consideration of the statement to the declarant, will generally address any risk of a Confrontation Clause violation. United States v. Sutton, 337 F.3d 792 (7th Cir. 2003); United States v. Souffront, 338 F.3d 809 (7th Cir. 2003); United States v. Hernandez, 330 F.3d 964, 973 (7th Cir. 2003); United States v. Brooks, 125 F.3d 484 501 (7th Cir. 1997). Accordingly, if the government intends to present co-defendant statements that incriminate Gral or Hanson, the government shall furnish Gral, Hanson, and the trial court with a proposed redaction of incriminating statement. This should be done prior to the final pretrial conference. Proceeding in this manner will alleviate the risk of a Confrontation Clause violation regardless of whether a co-defendants who made an incriminating statements chooses to testify at trial.

### III. Evidentiary Spillover

Gral's final claim in support of his motion for severance is that he will be prejudiced at a joint trial by the "spillover" of incriminating evidence applicable to the other defendants. Gral also makes the somewhat related claim that there is a substantial disparity in the evidence, with Brownell being far more involved in the conspiracy than he was.

In the opinion of the court, Gral's role in the alleged conspiracy was not a minor one. Quite the contrary, the information alleges that Gral was involved in a number of business ventures with Brownell, including four limited liability companies. All of those businesses allegedly benefited from, or were used in furtherance of, a number of different schemes discussed in the information. (See e.g., Information ¶¶ 20, 26, 31, 32.). Moreover, the information describes Gral's role in the fraudulent transactions as an active one, with Gral and Brownell working together as partners.

Furthermore, although the information does not allege that Gral was actively involved in the scheme carried out by Brownell and Hanson (Information ¶¶ 20-24.), Gral claims that one of his defenses at trial will be to deny knowledge of that scheme. In light of Gral's defense and Brownell's statement to law enforcement officials that Gral knew about his scheme with Hanson (Fishbach Decl. ¶ 5.), it appears that the evidence and issues relevant to Gral at trial may be more substantial than can be discerned from the face of the information alone.

Moreover, the number of allegations in a charging document that mention a defendant are not necessarily proportionate to the extent of the defendant's role in a conspiracy. Even if the allegations in the pending information indicate that the defendants often played different roles in the conspiracy, the court cannot conclude that any one defendant's role was less significant than any of the other's.

This reasoning applies to Gral's alleged role in the conspiracy as well. As counsel for Bielinski, Gral had a special relationship with the victim of the defendants' conspiracy. Based on the approximately $4 million in legal fees charged to Bielinski during the conspiracy (Information ¶ 27.), it can be reasonably inferred that Gral's legal services to Bielinski were extensive. Thus, the schemes described in the information—although carried out by Brownell and the other

defendants in certain respects—might not have lasted four years without Gral's involvement in the conspiracy.

Moreover, given the number of transactions and the various roles that each defendant played in the alleged conspiracy, it is the opinion of this court that a joint trial comprehensively addressing each defendant's role will assist the jury in understanding the evidence. If Gral is correct that his role was not as significant as Brownell's role, or the role of the other defendants, that may be apparent to the jury at a joint trial. Certainly, Gral's conduct is most accurately evaluated when viewed in light of those he worked with, and this case typifies the well established rule that "where the indictment charges a conspiracy, or a crime having a principal and aider-abettors, the rule is that persons jointly indicted should be tried together." United States v. Kahn, 381 F.2d 824, 838 (7th Cir. 1967); United States v. Sweeney, 688 F.2d 1131, 1140 (7th Cir. 1982).

For the foregoing reasons, the court finds that any disparity in weight of the evidence is not severe or uncommon. Any risk of prejudice to Gral that does exist is certainly not enough to overcome the presumptions that a jury will capably sort through the evidence and will follow limiting instructions. United States v. Gonzalez, 933 F.2d 417, 426 (7th Cir.1991)("the relevant inquiry is whether it is within the jury's capacity to follow the trial court's limiting instructions requiring separate consideration for each defendant and the evidence admitted against him."). Accordingly, the court will turn its attention to Gral's final claim of prejudice, based on a "spillover" of evidence.

In that regard, the court finds three considerations significant. First, there is an overlap in the evidence that would be introduced at a joint trial and that which could be introduced at a severed trial. United States v. Lanas, 324 F.3d 894, 900 (7th Cir. 2003)(citing United States v. Adeniji, 221 F.3d 1020, 1027 (7th Cir.2000)(evidence of one participant's actions in furtherance

12

of a mail fraud scheme is admissible against other participants in that scheme). This means that any prejudice to Gral due to "spillover" would not be alleviated by severance. It also means that many of the considerations that support the preference for joint trials—avoiding expensive and duplicative trials, improving judicial efficiency, avoiding the scandal and inequity of inconsistent verdicts—weigh heavily against a severed trial in this case. In addition, although the case is somewhat more complex than other cases due to many financial transactions that occurred over a number of years, a joint trial will assist the jury in understanding the evidence, for the reasons discussed in regard to Gral's claim based on disparity. And finally, this case does not appear to be more complex than others that the Seventh Circuit has held to be properly joined under Criminal Rule 14. United States v. Neely, 980 F.2d 1074, 1077 (7th Cir. 1992)(denial of severance upheld where co-defendants were tried at an eleven-week trial on mail fraud indictments involving twenty-six people); United States v. Ashman, 979 F.2d 469 (7th Cir. 1992)(two defendants were not entitled to sever their trials on charges of mail fraud, wire fraud, and RICO violations from the trial of the co-defendants, where the case involved complex factual situations involving the trading of futures contracts issued by Chicago Board of Trade); United States v. Lanas, 324 F.3d at 900 (case held not sufficiently complex to warrant severance where three defendants were charged with mail fraud stemming from an illegal kickback scheme).

For all of the reasons discussed herein, the court concludes that any prejudice to Gral and Hanson does not outweigh the benefits of joint trial in this case. Moreover, the risk of prejudice that exists for the reasons discussed in the defendants' motions will most effectively be addressed by way of a limiting instruction, if necessary, from the trial court. Accordingly, the court now enters the following order on the defendants' motions to sever:

**IT IS THEREFORE ORDERED** that Hanson's motion to sever is **denied.**

**IT IS FURTHER ORDERED** that Gral's motion to sever is **denied.**

**IT IS FURTHER ORDERED** that any statement incriminating Hanson or Gral by a co-defendant that the government intends to use at trial shall be properly redacted and furnished to the defendants and the court no later than the final pretrial conference.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this <u>22nd</u> day of September, 2005.

s/<u>AARON E. GOODSTEIN</u><br>United States Magistrate Judge